UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES WOODEN,<br><br>Defendant. | CASE NO. 2:24-cr-155 (1)<br><br>JUDGE MARBLEY |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**

Now comes the United States, by and through the undersigned Assistant United States Attorneys, and hereby opposes Defendant Charles Wooden's motion to review and revoke (Doc. #55) the magistrate judge's pretrial detention order (Doc. #36) and his request for release pending resolution of this matter. Magistrate Judge Vascura properly found the presumption of detention had not been rebutted and there was no condition or combination of conditions of release that would reasonably assure the safety of the community and Defendant's appearance as required if he were released. (Docs. #35, 36). Nothing has changed in the interim to negate those findings. As such, this Court should uphold the magistrate judge's order of detention.

I. **BACKGROUND**

At the detention hearing, the Government tendered Exhibit DH-1, a search warrant affidavit that outlined the facts of the instant case, in support of the argument to detain Defendant. (Doc. #35-1). As that document notes, the case began with the death of one of Defendant's unindicted coconspirators. At the scene of her death, which was ruled an overdose, investigators found a kilogram press, money counter, 22 firearms, ledgers, over $155,000 cash,

1

over 84 combined kilograms of cocaine and fentanyl, shipping labels and boxes, 29 cell phones and other items. Investigators also located multiple identification documents in several aliases the deceased appeared to be using. When the deceased's phone was examined, an incredible number of communications with Defendant and others were discovered in the WhatsApp application. (*Id.*)

Of importance to this Motion, there were messages between the deceased and Defendant dating back to 2018. In those messages, Defendant directed the deceased where to ship packages of narcotics and bulk currency, discussed recruiting others, renting stash houses, obtaining supplies, exchanged photos of drugs and money and so on. At one point in 2019, Defendant was upset because they were "mailing work to places that we don't have ids for" (referring to other co-conspirators picking up packages utilizing fake identification) and that it was "completely unnecessary since we perfected this whole process four years ago," indicating he had been trafficking narcotics as part of the drug trafficking organization as far back as 2015. (*Id.*) Additional records obtained during the investigation indicate this operation, which Defendant ran, shipped over 4,500 kilograms of drugs during the time alleged in the Indictment.

The above reference to 2015 lines up with evidence of the money laundering scheme as well. From that point on, large amounts of unexplained cash were used to pay off Defendant's primary residence, buy other homes, rehabilitate homes, and live far beyond his family's means. In total, the money laundering scheme involves almost $25 million dollars. (*Id.*).

During the investigation, an identification card in the name of "Donald Littlefield" but with a photo of Defendant, was found in Defendant's trash. Investigators researched this alias and learned Defendant had obtained an Arizona driver's license in that alias in 2013, while he was on the run for nearly 12 years from his Franklin County drug case. (*Id*. and Doc. #33).

Defendant has travelled over 50 times under the Littlefield alias and used it for mundane things like a gym membership and a visit to a shooting range, demonstrating an ability to live under a completely different name in a completely different state. He also received and sent packages of suspected narcotics under this alias during the time of the conspiracy, including seven packages to Arizona. *(Id.)* Similarly, Defendant used another alias, Ronald Tyron Mall, in his 2008 state drug trafficking case where he was also shipping parcels containing narcotics—a fact proffered by the Government at the detention hearing.

At the detention hearing, the Government also proffered information from the arrest and execution of the search warrant at Defendant's residence shortly after the Indictment. There were five loaded firearms located between the kitchen and primary bedroom, along with additional ammunition, mail addressed to "Donald Littlefield," and a new burner phone with the packaging that showed a missed call from Defendant's identified phone number.

On October 15, 2024, a grand jury returned an Indictment charging Defendant Charles Wooden with one count of conspiracy to distribute and possess with intent to distribute 5 kilograms or more of a mixture or substance containing and detectable amount of cocaine and 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i) and 841(b)(1)(A)(vi), one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and seven counts of substantive money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i). (Doc. # 8). At a detention hearing held on October 22, 2024, Magistrate Judge Vascura ordered Defendant detained pending trial. Specifically, Magistrate Judge Vascura found that Defendant failed to introduce sufficient evidence to rebut the presumption in favor of detention under 18 U.S.C. § 3142(e)(3) and that there were no conditions of release that would

reasonably assure Defendant's appearance and the safety of the community. (Docs. #35, 36).

## II. LEGAL STANDARD

This court reviews a magistrate judge's detention order de novo. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000). Judicial officers must order pretrial detention upon a finding that no condition or combination of conditions of release will reasonably assure either the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e). Courts consider several factors in making this determination, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to the community that the defendant's release would pose. *Id.* § 3142(g); *Yamini*, 91 F. Supp. 2d at 1126–27. A hearing on a motion to revoke a magistrate judge's detention order is not required. *United States v. Hughes*, No. 3:22-cr-124, 2023 WL 2849036, at *2 (S.D. Ohio April 10, 2023) (citing *United States v. Romans*, No. 00-5456, 2000 WL 658042, at *1 (6th Cir. May 9, 2000)).

The Bail Reform Act sets a presumption in favor of detention for defendants charged with certain offenses enumerated in 18 U.S.C. § 3142(e)(3). Included among those offenses are drug trafficking crimes found in 21 U.S.C. §§ 846 and 841. *See* 18 U.S.C. § 3142(e)(3)(A) (including offenses under sections 21 U.S.C. § 801 *et seq*). The defendant thus has the burden of producing "some credible evidence to rebut that presumption." *United States v. Brown*, Nos. M-2-07-290, CR2-08-106, 2008 WL 2098070, at *2 (S.D. Ohio May 16, 2008). Although a defendant's burden of production is not a heavy one, "[e]ven when a defendant satisfies his burden of production . . . 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" *United States v. Stone*, 608 F. 3d 939, 945 (6th Cir. 2010) (quoting *United States v. Mercedes*, 254 F.3d 433, 436

4

(2d Cir. 2001)). This is so because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.* at 945.

### III. ARGUMENT

Defendant should remain detained pending trial in this matter. The blanket statements that Defendant has proffered in his Motion do not rebut the presumption of detention established by 18 U.S.C. § 3142(e)(3)(A). Defendant incorrectly notes that the Court did not make the necessary findings that no conditions of release would assure Defendant's appearance and the safety of the community. In addition to orally making such finding at the conclusion of the detention hearing, that information is specifically noted in the minutes from the detention hearing where "[t]he Court found there were no conditions of release that would reasonably assure Defendant's appearance and the safety of the community." (Doc. #35). Additionally, there is evidence sufficient to meet both the clear and convincing standard necessary to establish dangerousness and the preponderance standard required to establish flight risk, and as such, there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community and Defendant's appearance as required.

**A. The Statutory Presumption in Favor of Detention**

In his Motion, Defendant proffers generic assertions that he will "offer substantial evidence to the Court that he is neither a danger to the community nor a risk of non-appearance," in large part because there is a wide range of conditions this Court could place upon him if released. (Doc. #55). No particular information is proffered to support this claim.

Congress found that a presumption of detention is appropriate in all cases where there is probable cause that a defendant has committed the violations at issue here. In this case, the Indictment returned by the Grand Jury establishes probable cause that Defendant has committed

those violations. Thus, Defendant must initially come forward with some evidence that his case is different from others of this class. He has not done that.

### B. Factors to be Considered in Determining Detention or Release

Even if the Court were to find that Defendant has rebutted the statutory presumption of detention, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Stone*, 608 F. 3d at 945 (internal citations and quotations omitted). Considering the presumption in favor of detention combined with the other factors set out in the Bail Reform Act, 18 U.S.C. § 3142(g), there is no condition or combination of conditions that would reasonably assure the safety of the community and Defendant's appearance as required.

1. The Nature and Circumstances of the Offenses

The nature and circumstances of the offenses merit Defendant's continued detention because they reflect both a risk of flight and a danger to the community. This case involved thousands of kilograms of dangerous narcotics and millions of dollars in funds that have been laundered. The members of the organization frequently utilized fake IDs and burner phones, much like the one recovered at Defendant's residence when he was arrested, to pick up parcels of drugs and money at FedEx locations. The organization also operated in multiple states, utilizing locations in California, Texas, and Ohio. It also worth noting Defendant is no minor player in this organization: he is the shot caller and the one who "perfected" this all as far back as 2015.

If convicted on Count One of the Indictment, Defendant faces a mandatory minimum ten years and up to life imprisonment by statute. *See* 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Using a conservative calculation of the relevant conduct attributable to Defendant in conjunction with his criminal history, a conviction without acceptance of responsibility puts Defendant in a guidelines

6

range of 360 months to life imprisonment. Defendant is 46 years old. Thus, even if given a sentence other than "life," Defendant is arguably facing a life sentence if convicted at trial. "Notwithstanding the presumption of innocence, which applies in every case," the Sixth Circuit has determined that in cases where the defendant is charged with "significant involvement in a large-scale drug conspiracy," this factor weighs in favor of detention. *United States v. Alcauter*, No. 23-3278, 2023 WL 6378271, at *1 (6th Cir. July 11, 2023). This information does not even take into account the money laundering offenses, which also carry heavy sentences upon conviction.

        2. <u>The Weight of the Evidence</u>

As a starting point, the second factor "goes to the weight of the evidence of dangerousness [or risk of flight], not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948; *Alcauter*, 2023 WL 6378271, at *2. Defendant is charged with offenses involving the distribution of two different dangerous controlled substances on a multi-kilogram scale. And this is not the first time Defendant has participated in this type of criminal conduct. He has a history of drug and weapon-related charges and convictions, including as recently as 2022. (Doc. #33.) Defendant has already served eight years of incarceration for an aggravated robbery in the late 1990s. (*Id.*) Additionally, he was in a capias status for almost twelve years on his last drug case. (*Id.*) During the period of time he was avoiding prosecution for his last drug offense in central Ohio he was living under his "Donald Littlefield" alias in the state of Arizona.

In addition to the lengthy term of incarceration Defendant faces if convicted and his flight in his prior case, as noted above, he has a history of utilizing aliases and documents in those name(s) that are sophisticated enough to permit him to fly with false identification. During the investigation, Defendant travelled under his alias of "Donald Littlefield" multiple times,

including with his wife and co-defendant, Courtney Musick. This demonstrates an ability to disappear and avoid prosecution, much like he did for almost twelve years with his prior drug case. The weight of the evidence of dangerousness and risk of flight indicates Defendant should remain detained.

        3.    <u>The History and Characteristics of the Person</u>

In considering the history and characteristics of the defendant, courts consider the following non-exhaustive list of factors:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

18 U.S.C. § 3142(g)(3).

While Defendant has ties to Columbus, he has travelled extensively during the period of time he was under investigation and previously lived in Arizona under his alias. He has no stable legitimate employment and has not appeared to for some time. Yet, he can somehow afford an extravagant wedding, expensive cars, custom jewelry, private schooling for his children and multiple properties. (Doc. #35-1). As noted at the detention hearing, the United States believes Defendant and his wife, co-defendant Courtney Musick, were using their real estate LLCs to launder drug proceeds in this case. (*Id.*) Defendant's last address was with his wife for "a couple of years" and before that he was "bouncing around" and "had no address" (this would have been while he was living in Arizona under his alias). He also travelled to Mexico a "few months ago." (Doc. #33).

According to the Pretrial Services report, Defendant has additional family in the

Case: 2:24-cr-00155-ALM Doc #: 58 Filed: 12/06/24 Page: 9 of 11 PAGEID #: 224

Columbus area, to include additional biological children. (Doc. #33). Yet, nothing about those long-standing relationships in the community have deterred him from a consistent criminal record. As noted above, packages were sent over a span of multiple years and to/from multiple locations, demonstrating his ability to engage in criminal activity no matter his physical location. Defendant's history and characteristics weigh in favor of detention pending trial.

4. <u>The Nature and Seriousness of the Danger to Any Person or the Community</u>

Finally, the nature and seriousness of the danger Defendant poses to the community if released cannot be overstated, especially in a drug-trafficking case of this scale. *See Stone*, 603 F.3d at 947 n.6 (explaining that "drug trafficking is a serious offense that, in itself, poses a danger to the community"). Moreover, Defendant's criminal history includes a prior drug conviction stemming from a similar fact pattern, which indicates he is either unable or unwilling to change his behavior. While there may be conditions the Court could impose to attempt to secure Defendant's presence in court, there is no condition the Court can impose that will prevent Defendant from continuing to engage in narcotics trafficking if released. In fact, he continued to engage in the same activity while under indictment for his 2008 state case. Again, the rebuttable presumption "represents the belief of Congress that in the majority of serious Controlled Substance Act offenses, there is an increased risk of flight or danger to the community, and in particular, the danger that the defendant will resume drug trafficking activities while released." *United States v. Marcrum*, 953 F. Supp. 2d 877, 883 (W.D. Tenn. 2013) (internal quotations omitted). That risk continues to be present here and as such, Defendant should remain detained pending trial.

**IV.** **<u>CONCLUSION</u>**

For the foregoing reasons, the United States respectfully requests that the Court deny

9

Defendant's Motion to Revoke Magistrate Judge Vascura's pretrial detention order. Defendant should remain detained pending trial.

        Respectfully submitted,

        KENNETH PARKER
        United States Attorney

        *s/Jennifer M. Rausch*
        NICOLE PAKIZ (0096242)
        JENNIFER M. RAUSCH (0075138)
        Assistant United States Attorneys
        303 Marconi Boulevard, Suite 200
        Columbus, Ohio 43215
        Office: (614) 469-5715
        Fax: (614) 469-5653
        E-mails: Nicole.Pakiz@usdoj.gov
                Jennifer.Rausch@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Government's Response in Opposition to Defendant's Motion to Revoke was served this 6th day of December 2024, electronically upon all counsel of record.

*s/Jennifer M. Rausch*
JENNIFER M. RAUSCH (0075138)
Assistant United States Attorney
