**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:24-cr-155(1) |
| v. | : | JUDGE MARBLEY |
| CHARLES WOODEN, | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter comes before this Court on Defendant Charles Wooden's Motion to Review and Revoke Detention Order ("Motion"). (ECF No. 55). Mr. Wooden asks this Court to revoke the magistrate judge's pretrial detention order, under 18 U.S.C. § 3145(b), and to place him on pretrial release with conditions. For the reasons set forth below, the Motion is **DENIED**.

**I.    BACKGROUND**

In October 2024, Wooden was indicted on nine charges related to trafficking cocaine and fentanyl and laundering the drug proceeds. Specifically, he was charged with one count of drug conspiracy in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i) and 841(b)(1)(A)(vi); one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h); and seven counts of substantive money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i). (ECF No. 8).

Following a detention hearing, Magistrate Judge Chelsey Vascura ordered Wooden detained pending trial. (ECF No. 36). On December 2, 2024, Wooden moved to revoke the pretrial detention order. (ECF No. 55). The Government timely opposed (ECF No. 58), and on February 3, 2025, this Court heard oral argument and took the matter under advisement.

## II. STANDARD OF REVIEW

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court reviews a magistrate judge's detention order *de novo*, making an independent determination of the proper pretrial detention or conditions for release. *See United States v. Yamini*, 91 F. Supp. 2d 1125, 1128-29 (S.D. Ohio 2000); *United States v. Brooks,* 685 F. Supp. 3d 476, 479 (E.D. Mich. 2023). Although the court "need not defer to the magistrate judge's ultimate conclusion nor start from scratch," it "must engage in some independent review of the decision." *Brooks*, 685 F. Supp. 3d at 479.

A hearing on a § 3145(b) motion is not required, but a court may choose to hold a hearing "in order to fully explore [a] [d]efendant's circumstances and contentions." *United States v. Hughes*, 668 F. Supp. 3d 744, 747 (S.D. Ohio 2023). The Federal Rules of Evidence do not apply to detention matters, and a court may consider both hearsay and evidence provided by proffer. *United States v. Stone*, 608 F.3d 939, 948–49 (6th Cir. 2010).

## III. LAW & ANALYSIS

A defendant may be detained pending trial "only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *Stone*, 608 F.3d at 947 (quoting 18 U.S.C. § 3142(e)). A judge's finding of dangerousness must be "supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). Risk of flight, on the other hand, requires proof by a preponderance of the evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) (citing *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003)). Although "[t]he default position of the law . . . is that a defendant should be released pending trial," that default is "modified . . .

for certain, particularly dangerous defendants." *Stone*, 608 F.3d at 945. When a defendant is charged with a narcotics offense that carries a minimum imprisonment term of ten years, for example, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

To rebut the presumption, the defendant bears the "burden of production" and must come forward with "some evidence" that he does not pose a danger to the community or a risk of flight. *Stone*, 608 F.3d at 945. This burden "is not heavy," and any "favorable information about [the defendant's] character and criminal history" suffices. *Stone*, 608 F.3d at 947. Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* at 945 (internal quotation marks omitted). That is because the presumption is not "simply an evidentiary tool;" it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

The Government retains the burden of persuasion and, regardless of the presumption, must prove that no conditions of release can ensure that the defendant will appear and to assure the safety of the community. In determining whether the Government has met its burden, courts consider four factors: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *See* 18 U.S.C. § 3142(g).

Because Mr. Wooden is charged with a drug conspiracy offense that carries a maximum sentence of life imprisonment, *see* 21 U.S.C. §§ 846, 841(b)(1)(A)(i), 841(b)(1)(A)(vi), the

3

presumption in favor of detention applies. *See* 18 U.S.C. § 3142(e)(3). He therefore must come forward with some evidence to rebut the presumption that he is neither a danger to the community nor a flight risk.

Wooden's arguments for pretrial release focus on his conduct during criminal proceedings. First, he admits that after being indicted for a 2008 drug trafficking offense in the Franklin County Court of Common Pleas, he fled and avoided detection for almost 12 years. He emphasizes, however, that he eventually turned himself in to "face down those charges" and insists that he plans to do the same now. Second, Wooden points to his conduct during the two years of government surveillance leading up to his federal indictment. According to Wooden, all law enforcement observed during that time was him flipping houses, driving around Columbus and Cleveland, and going to his children's soccer games. And despite knowing about the surveillance, Wooden maintains that he still traveled—to Nevada, California, Arizona, Mexico, and Aruba for his honeymoon. He argues that these facts weigh against finding he is a flight risk. As to dangerousness, Wooden contends that no narcotic transactions were observed during this two-year stretch; nor was he found in possession of any narcotics.

But according to the Government, Defendant's conduct is less innocuous than it might appear. Of particular concern to the Government is Wooden's use of multiple aliases and false identifications over the years to live in a different state, to travel, and even to do otherwise mundane things. The Government argues that these aliases not only helped Wooden evade arrest on his 2008 state offense, but also demonstrate his ability to disappear under a whole new name. The Government also notes that, while under surveillance, Wooden's conduct far from "normal": up until his arrest, Wooden was observed switching out cars and using rental cars to make him

4

harder to track. On the dangerousness front, the Government submits that a co-conspirator turned up dead from a fentanyl overdose; that firearms were found at Wooden's residence (weapons that, as a felon, he is not allowed to have); and that the volume of drugs involved is estimated to be over 4,500 kilograms. All of this, according to the Government, favors finding that he poses both a flight risk and a continuing danger to the community.

For the following reasons, this Court finds that, even if Defendant met his burden to rebut the presumption of pretrial detention, the § 3142(g) factors favor keeping him detained pending trial.

*1. Nature and Circumstances of the Offense Charged*

This factor considers whether the offense charged is a crime of violence or involves a controlled substance. 18 U.S.C. § 3142(g)(1). There is no dispute that Wooden was charged with an offense involving a controlled substance. Firearms were also found at his residence at the time the search warrant was executed, the presence of which—particularly in the context of drug trafficking—"suggests a readiness to use or to engage in armed confrontations, heightening the risk to law enforcement, innocent bystanders, and potential rivals or competitors in the illicit drug trade." *Brooks*, 685 F. Supp. 3d at 479. As this Court observed when declaring this case complex, the charges against Defendant involve a good deal of money and drugs across several states (ECF No. 54), "suggest[ing] a potential for widespread distribution and the negative impact on people and communities affected by drug addiction and related criminal activities." *Id*.

While Wooden's interest in defeating his federal charges "create some incentive for him to remain compliant and homebound," the crimes carry high minimum and maximum sentences and thus "create countervailing incentives to flee." *United States v. Brown*, 601 F. Supp. 3d 196, 203-04 (W.D. Ky. 2022). Indeed, the Sixth Circuit has explained that "[s]uch significant penalties

provide a strong incentive to flee." *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020).

Taken together, the nature and circumstances of Wooden's offenses thus favor detention.

### 2. Weight of the Evidence

This factor "goes to the weight of the evidence of dangerousness [or risk of flight], not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948.

Wooden's prior disappearance to Arizona establishes that he likely "has the ability and potentially the inclination to flee . . . ." *See Brown*, 601 F. Supp. 3d at 203–04 ("The fact that [defendant] successfully and secretly left [jurisdiction] once is evidence that he could do it again."); *United States v. Glasgow*, No. 1:20-cr-27-7, 2021 WL 2403136, at *12 (D.D.C. June 11, 2021) ("[The defendant] has left the area in the past ... and the Court sees no reason to believe he will not leave again."). Defendant's history of utilizing aliases sophisticated enough to permit him to fly with false identification also favor pretrial detention. *United States v. Williams*, No. CR23-90-JHC, 2 (W.D. Wash. Jun. 20, 2023) (defendant's use of "different aliases and false identification documents including social security numbers," as well as "relocation to another state after being contacted by law enforcement in this District," supports finding of "both a risk of flight and a danger to the community")

Accordingly, this factor also favors pretrial detention.

### 3. History and Characteristics of the Defendant

The third factor considers a defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, . . . criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3).

6

The Government has not raised—and this Court has not observed—any substantial concerns over Wooden's mental health, substance use, or community ties that would favor pretrial detention. But Defendant's residence, employment status, criminal history, and record of past court appearances do give this Court some pause. According to the Pretrial Services report, Wooden's last address was with his wife—co-defendant Courtney Musick—for "a couple of years" after "bouncing around," presumably while living in Arizona under his alias. (ECF No. 33). The Government alleges that Defendant has used his real estate business to launder drug proceeds. So while he might have gainful employment, it is not necessarily legal employment. Finally, and perhaps most compelling, Wooden has a criminal history *and* a proven record of evading law enforcement and avoiding prosecution, doing so for almost twelve years with his prior drug case.

Wooden's history and characteristics therefore weigh in favor of pretrial detention.

    *4.  Nature and Seriousness of the Danger Posed by Defendant's Release*

Finally, this Court must analyze "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

Drug trafficking is "a serious offense that, in itself, poses a danger to the community." *See Stone*, 603 F.3d at 947 n.6; *see also United States v. Beard*, 528 F. Supp. 3d 764, 774 (N.D. Ohio 2021) ("The purchase and sale of narcotics is an inherently dangerous activity and poses a danger to the community." (internal quotation marks and citation omitted)). For this reason, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *See Stone*, 608 F.3d at 947 n.6 (collecting cases); *see also United States v. Marcrum*, 953 F. Supp. 2d 877, 883 (W.D. Tenn. 2013) (noting that that rebuttable presumption "represents the belief of Congress that in the majority of serious Controlled Substance Act offenses, there is an increased risk of flight

or danger to the community, and in particular, the danger that the defendant will resume drug trafficking activities while released") (internal quotations omitted)).

Not only is Wooden charged with drug trafficking here, but he is charged with dealing in fentanyl, a drug notorious for its "high potential for addiction and overdose" and its contribution to the ongoing opioid crisis. *See Beard*, 528 F. Supp. 3d at 773. The Government also notes that Wooden's unindicted co-conspirator had died from a fentanyl overdose and, when her phone was examined, law enforcement discovered communications from Defendant directing the deceased "where to ship packages of narcotics and bulk currency," and discussing "recruiting others, renting stash houses, obtaining supplies, exchanged photos of drugs and money and so on." (*See* ECF No. 58 at 2).

To be clear, this Court does not evaluate (nor could it) Defendant's guilt or innocence at this stage. *See* 18 U.S.C. 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence"). It "considers this evidence only in terms of future danger." *Brown*, 601 F. Supp. 3d at 206. "Viewed through that narrow lens," *id.*, the evidence proffered by the Government suggests that Defendant is able to continue criminal activity no matter his physical location.

Also probative of dangerousness is Defendant's criminal history, which includes a prior drug conviction allegedly stemming from a similar fact pattern. *See United States v. Roberson*, No. 1:21-CR-127, 2022 WL 2980530, at *6 (S.D. Ohio July 28, 2022) (criminal history that includes prior drug and weapons convictions and failure to appear for court "raise serious concerns as to whether [defendant] can be safely released back into his community"). So too is the substantial quantity of drugs estimated to be involved here. That Defendant is alleged to have shipped over 4,500 kilograms of drugs (*see* ECF No. 58 at 3) suggests "a potential for widespread distribution

and the negative impact on people and communities affected by drug addiction and related criminal activities." *Beard*, 528 F. Supp. 3d at 773; *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) ("Society as a whole is the victim when illegal drugs are being distributed in its communities.").

Taken together, these circumstances present a compelling case for the seriousness of the offense and the potential danger posed by Defendant if he were released. This Court therefore concludes that no conditions short of detention can reasonably secure Defendant's appearance and protect public safety. *See United States v. Tawfik*, No. 17-CR-20183-2, 2017 WL 1457494, at *8 (E.D. Mich. Apr. 25, 2017) (rejecting defendant's offer to "wear[] a GPS tether" while on pretrial release for charges stemming from human trafficking and drug-distribution conspiracy, finding that the condition "offers little assurance of . . . an intent to forego activities that pose a danger to the community"); *Brown*, 601 F. Supp. 3d at 204 (finding electronic monitoring insufficient to ensure appearance of defendant who previously disappeared, noting that defendants "cut off their electronic monitors [a]ll the time"). Whether Wooden can assist in his defense, moreover, "does not have any impact on the determination of whether conditions of release would assure his appearance or protect the public." *See United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020).

Given the statutory presumption in favor of detention, and the factors set forth in § 3142(g), this Court concludes that Wooden is both a flight risk and poses a continuing risk to the community. Accordingly, no conditions short of detention are likely to guarantee his appearance and protect public safety.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Review and Revoke the Detention Order (ECF No. 55) is **DENIED**.

**IT IS SO ORDERED.**

                                                                                                    ALGENON L. MARBLEY
**DATED: February 5, 2025**                        **United States District Judge**